IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL STREET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06 C 2963 |
| v. | ) |
| | ) |
| INGALLS MEMORIAL HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Cheryl Street filed the present three-count First Amended Class Action Complaint alleging a claim of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* against her former employer, Defendant Ingalls Memorial Hospital ("Ingalls"), and two claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* against Ingalls, as a plan administrator and fiduciary. Before the Court is Defendant's Motion to Dismiss Counts II and III of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendant's Motion for Summary Judgment as to Count II of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part Ingalls' motion to dismiss. The Court grants Ingalls' summary judgment motion.

## BACKGROUND

Street, as a beneficiary and participant, alleges that Ingalls improperly delayed the payment of her short-term disability ("STD") and long-term disability ("LTD") benefits while her workers' compensation claim was still pending. Street seeks interest on these delayed benefit

payments. Ingalls moves to dismiss these claims arguing that the monetary relief Street seeks is unavailable under ERISA Section 502(a)(3).

Moreover, in Count II of her First Amended Complaint Street alleges that Ingalls violated ERISA's reporting and disclosure requirements by failing to issue a summary plan description and IRS Form 5500s for its STD plan. In its summary judgment motion, Ingalls argues that ERISA does not govern its STD plan, and thus seeks to dismiss Count II in its entirety.

## **STANDARDS**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *see also Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005) (motion to dismiss challenges complaint's sufficiency). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers,* 398 F.3d at 333.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

### I. ERISA-Governed Welfare Benefit Plan

The Court first turns to Ingalls' summary judgment motion. Under Count II of the First Amended Complaint, Street alleges that Ingalls violated ERISA's reporting and disclosure requirements by failing to issue a summary plan description and IRS Form 5500s for its STD plan. (First Am. Compl. Count II ¶¶ 22-24.) Ingalls contends that its STD benefit policy is not an ERISA plan, and thus it is not required to make such disclosures. More importantly, Ingalls argues that because ERISA does not govern its STD policy, the Court should dismiss Count II in its entirety.

#### A. Background

Street is a former employee of Ingalls Memorial Hospital. (R. 47-1, Def.'s Stmt. Facts ¶ 3.) Ingalls operates a hospital in Cook County, Illinois, and sponsors employee benefit plans for certain employees. (*Id*. ¶ 4.) More specifically, Ingalls pays compensation to employees who are unable to work due to an illness or injury which is not compensable under workers compensation. (*Id*. ¶ 5.) For example, on the 61st calendar day after an accident or injury that is not covered under workers compensation, Ingalls pays – from its general assets – compensation equal to a 60% of the exempt employee's income up to the 180th day after the accident or injury. (*Id*. ¶ 6.) Beginning on the 181st day, the employee may be eligible for LTD benefits under a separate employee benefit plan sponsored by Ingalls and funded through an insurance policy issued by

3

Reliance Standard Insurance Company. (*Id*. ¶ 7.)

On May 22, 2004, Street suffered an injury at work and thereafter made a claim for workers compensation benefits with respect to her injury. (*Id.* ¶¶ 8-9.) After resolving her claim for workers compensation benefits, Ingalls paid Street $9,719.07 (gross) from its general assets, representing STD benefits for the period from June 15, 2004 through September 17, 2004. (*Id.* ¶ 9.) In a letter dated August 15, 2004, Reliance informed Street that she would receive LTD benefits for the period from September 18, 2004 through September 19, 2005. (*Id.* ¶ 10.)[1]

**B.     Analysis**

Street argues that Ingalls' program of paying disability benefits from the 61st day to the 180th day from the date of onset is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), which states in relevant part:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

In short, ERISA covers employee welfare benefit plans that provide employees with benefits in the event of sickness, accident, or disability. *See Bland v. Fiatallis N. Am., Inc.,* 401

---

[1] Because Street admits certain factual statements made in Ingalls' Local Rule 56.1(a)(3) Statement of Facts and did not file her own statement of additional facts pursuant to Local Rule 56.1(b)(3)(C), Street's arguments concerning Ingalls' discovery responses do not – and cannot – create a genuine issue of material fact. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (uncontroverted statements are deemed admitted); *Koszola v. Board of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (Seventh Circuit consistently upholds district court's discretion to require strict compliance with its local rules governing summary judgment).

4

F.3d 779, 783 (7th Cir. 2005). The Secretary of the Department of Labor ("DOL"), however, has instituted an exemption that excludes certain payroll practices from ERISA coverage:

> (b) Payroll practices. For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include –
>
> ...
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons. . .

*See* 29 C.F.R. § 2510.3-1(b)(2). Plans that fall under the payroll practice exception are exempted from coverage under ERISA because – although they relate to benefits described in ERISA– they are more closely associated with normal wages or salary. *Bassiri v. Xerox Corp.,* 463 F.3d 927, 929 (9th Cir. 2006) (citation and quotations omitted).

Street does not refute the fact that Ingalls pays compensation equal to 60% of the exempt employee's income from the 61st day up to the 180th day from its general assets when an employee is unable to work due to illness or injury. (R. 55-1, Pl.'s Corrected Rule 56.1 Resp. ¶ 6.) Instead, Street argues that 60% of the exempt employee's income is not "normal compensation" under Section 2510.3-1(b)(2) and takes umbrage with Ingalls' reliance on the DOL's advisory opinions that state otherwise. More specifically, Ingalls cites PWBA Advisory Op. 93-27A (dated Oct. 12, 1993) for the proposition that programs which pay 65% of compensation during periods of disability are within the payroll practice exception. Ingalls also relies on PWBA Advisory Op. 93-02A (dated Jan. 12, 1993) which states that the payment of 60% of an employee's salary meets the payroll practice exception.

Street's argument that the DOL's advisory opinions are inconsequential is without merit. *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). In *Auer*, the

Supreme Court held that when an agency, such as the Department of Labor, interprets its own regulation, the agency's interpretation is accorded deference unless it is plainly erroneous or inconsistent with the regulation. *See id*.; *see also Gonzales v. Oregon,* 546 U.S. 243, 126 S.Ct. 904, 915, 163 L.Ed. 2d 748 (2006). Here, the DOL's advisory opinions give specificity to the DOL's own regulation, 29 C.F.R. § 2510.3-1(b)(2), and are consistent with the statutory scheme that the Secretary of Labor was charged with enforcing. *See Gonzales*, 126 S.Ct. at 908; 29 U.S.C. § 1135 ("Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter."); *Massachusetts v. Morash,* 490 U.S. 107, 113, 109 S.Ct. 1668, 104 L.Ed 2d 98 (1989). As such, the Court gives deference to the DOL's advisory opinion that an employer's payment of 60% of an employee's salary meets the payroll practice exemption. *See* PWBA Advisory Op. 93-02A; *see also Bassiri*, 463 F.3d at 933 ("We therefore defer to the Department of Labor's interpretation, and find that Xerox's LTD Plan may qualify as an exempt payroll practice under 29 C.F.R. § 2510.3-1(b)(2) even though it pays less than an employee's full salary."); *Havey v. Tenneco*, Inc., No. 98 C 7137, 2000 WL 198445, at *8 (N.D. Ill. Feb. 11, 2000) (payments of less than full compensation fall within payroll practice exception).

Here, it is undisputed that Ingalls' STD policy provides for the payment of 60 % of the employee's compensation out of Ingalls' general assets for a period of time during which the employee is unable to work due to an accident or illness that is not covered by workers compensation. (Def.'s Stmt. Facts ¶ 6.) Accordingly, Ingalls' STD policy falls within the exemption set forth in 29 C.F.R. § 2510.3-1(b)(2). Because ERISA does not govern Ingalls' STD policy, the Court grants Ingalls' summary judgment motion and dismisses Count II of the First Amended Complaint with prejudice.

**II.     Remedies Under ERISA Section 502(a)(3)**

   **A.     Monetary Relief**

Next, the Court addresses Ingalls' motion to dismiss, namely, whether Street is entitled to the monetary relief she seeks in Count III of her First Amended Complaint. Street specifically seeks "monetary damages" in the amount of interest on her LTD payments that she should have received in 2004. (R. 34-2, First Am. Compl. Count III ¶ 26.) In its motion to dismiss, Ingalls contends that Street is not entitled to any such relief under Section 502(a)(3) as a matter of law.

Section 502(a)(3) allows for injunctive or "other appropriate equitable relief:"

> a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain ***other appropriate equitable relief*** (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3) (emphasis added). In general, courts have recognized that "other appropriate equitable relief" includes certain money damages. *See May Dep't Stores Co. v. Federal Ins. Co.,* 305 F.3d 597, 602-03 (7th Cir. 2002); *Clair v. Harris Trust & Sav. Bank,* 190 F.3d 495, 498 (7th Cir. 1999) ("[N]ot all monetary relief is damages. Equity sometimes awards monetary relief, or the equivalent."). In the *May* decision, the Seventh Circuit explained that monetary relief is available under Section 503(a)(3) as an element of an equitable remedy pursuant to "the equity clean-up doctrine, which allows an equitable suitor to obtain incidental damages relief in his equity suit so as to spare himself, the defendant, and the judiciary the burden of two suits on the same claim." *May,* 305 F.3d at 602-03. The *May* court also concluded that

"the wrongful withholding of benefits due can entitle the beneficiary to impose a constructive trust on interest on the withheld benefits, an equitable remedy that results in a money payment to the plaintiff." *Id.* at 603. The Seventh Circuit further elaborated:

> By withholding benefits, a plan can obtain interest that would otherwise be obtained by the beneficiary. That interest is not itself a benefit, and so the beneficiary cannot bring a suit under (a)(1)(B) to recover it. But he can sue to recover it under (a)(3), because it is an amount by which the plan has unjustly enriched itself, and unjust enrichment is a basis, indeed the usual basis, for imposing a constructive trust on a sum of money.

*Id.*[2]

Since the Seventh Circuit's decisions in *May* and *Clair*, the Supreme Court has modified the definition of "other appropriate equitable relief." *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, ___ U.S. ___, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Knudson,* the Supreme Court examined the remedy of restitution under Section 502(a)(3)(B) concluding that "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. The Supreme Court further articulated that whether restitution is legal or equitable depends on the basis of the plaintiff's claim and the nature of the underlying remedies plaintiff seeks. *Id.* at 213 (citing *Reich v. Continental Cas. Co.,* 33 F.3d 754, 756 (7th Cir. 1994)). Moreover, the *Knudson* Court distinguished equitable restitution from legal restitution – which is not allowed under Section 502(a)(3)(B) – by explaining that equitable restitution ordinarily takes the form of a constructive trust or equitable lien. *See id.*; *see also Committee of the Wal-Mart Stores, Inc. Assocs.' Health &*

---

[2] Because Street cannot maintain an action under Section 502(a)(1)(B), the Court rejects Ingalls' alternative argument that Street's underlying claim was not properly brought under Section 502(a)(3). *See May Dep't Stores Co. v. Federal Ins. Co.,* 305 F.3d 597, 603 (7th Cir. 2002).

8

*Welfare Plan v. Varco*, 338 F.3d 680, 686 (7th Cir. 2003).

In *Knudson,* the defendant was a plan beneficiary who received a tort action settlement. *Id.* at 207. Pursuant to state probate law, the defendant placed the settlement funds in a special needs trust to provide for medical care. *Id.* Thereafter, the plaintiff insurer brought a lawsuit under ERISA Section 502(a)(3). *Id.* Because the funds were no longer in defendant beneficiary's possession, the *Knudson* Court concluded that the plaintiff could not enforce a constructive trust or equitable lien on the defendant's general assets. *Id.* at 213-14. In making its determination, the Supreme Court went back to "the days of the divided bench" relying on the premise that in traditional claims for equitable restitution, a plaintiff could obtain an equitable lien or constructive trust if the plaintiff's money or property could be clearly traced to particular funds or property in the defendant's possession. *Id.* at 212-13 (citing Dobbs § 4.3(1), at 587-588; Restatement of Restitution § 160, Comment *a,* at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978)); *see also Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255-56, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("other appropriate equitable relief" means "those categories of relief that were typically available in equity"). After *Knudson*, the circuit courts split regarding the *Knudson* traceability/possession test. *See Mid Atl. Med. Servs., LLC v. Sereboff,* 407 F.3d 212, 218-19 (4th Cir. 2005); *but see Providence Health Plan v. McDowell,* 385 F.3d 1168, 1174 (9th Cir. 2004).

In 2006, the Supreme Court resolved the circuit split concerning the proper test for whether relief is legal or equitable in relation to Section 502(a)(3). *See Sereboff,* 126 S.Ct. 1869. The unanimous *Sereboff* Court modified the *Knudson* traceability rule holding that if the claimed equitable lien or constructive trust is by agreement, the assets plaintiff seeks need not be traceable to a particular fund or property. *See Sereboff,* 126 S.Ct. at 1875-76 (equitable lien sought as a matter of restitution and an equitable lien by agreement are different species of relief). The

9

*Sereboff* Court, however, reaffirmed the general *Knudson* holding that monetary relief is unavailable under Section 502(a)(3) if the plaintiff is not seeking to recover particular funds or property in a defendant's possession. *Sereboff,* 126 S.Ct at 1874.[3]

Here, Ingalls contends that because there is no agreement concerning an equitable lien or constructive trust, Street's failure to identify particular funds in Ingalls' possession makes the monetary relief Street seeks unavailable under Section 502(a)(3). The Court agrees. Street nevertheless argues that *Sereboff* and *Knudson* are inapplicable because they only apply to cases in which fiduciaries are bringing claims against plan participants and not – like the present circumstances – in which a beneficiary is bringing a breach of fiduciary duty claim.

The *Sereboff* and *Knudson* holdings, however, are not as narrow as Street suggests. In *Sereboff,* the Court confirmed that it was clarifying "the scope of the remedial power conferred on district courts by § 502(a)(3)(B)" as it did in *Mertens* and *Knudson*. *See Sereboff,* 126 S.Ct. at 1873. Moreover, in *Knudson*, the Supreme Court's reasoning was broadly phrased as it discussed "the nature of the relief sought." *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005) (citing *Knudson,* 534 U.S. at 515). In *Calhoon*, the Eighth Circuit noted that "the statutory language does not condition available remedies on the defendant's identity, but simply states that 'a participant, beneficiary, or fiduciary' may bring a civil action." *Id.; see also Callery v. U.S. Life Ins. Co. in City of New York*, 392 F.3d 401, 409 (10th Cir. 2004) ("in a suit by a beneficiary against a fiduciary, the beneficiary may not be awarded compensatory damages as

---

[3] Street argues that the Seventh Circuit's decision in *Clair v. Harris Trust & Sav. Bank,* 190 F.3d 495 (7th Cir. 1999) – in which the Seventh Circuit did not address the issue of whether a plaintiff must identify particular funds or property in a defendant's possession – is controlling case law. This argument is simply without merit. *See Jaffree v. Board of Sch. Comm'rs of Mobile County*, 459 U.S. 1314, 1316, 103 S.Ct. 842, 74 L.Ed 2d 924 (1983) (district courts are obliged to follow Supreme Court precedent).

'appropriate equitable relief' under § 502(a)(3) of ERISA."); *Rego v. Westvaco Corp.*, 319 F.3d 140, 145-46 (4th Cir. 2003) (*Knudson* applies to a beneficiary bringing claim against a fiduciary under Section 502(a)(3)(B)). In short, whether the defendant is a fiduciary or non-fiduciary does not affect what type of relief is available under Section 502(a)(3). *See Calhoon*, 400 F.3d at 598; *see also McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir. 1996); *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir. 1994). The *Calhoon* decision is persuasive, especially in light of the clear statutory language that "a participant, beneficiary, or fiduciary" may bring a civil action under Section 503(a)(3). Thus, Street's argument to the contrary is misplaced.

Nonetheless, Street also contends that the Supreme Court's decision in *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) – in which the plaintiffs were seeking reinstatement as participants in the employer's ERISA plan – controls because the *Varity* plaintiffs were participants seeking relief from ERISA fiduciaries like the present action. Street tries to distinguish *Varity* from *Serebroff* and *Knudson* so that she may seek relief from Ingalls' general assets – as opposed to any particularized fund as required in the later Supreme Court decisions. Such a distinction, however, is unavailing, especially because the *Varity* plaintiffs were seeking the undisputedly equitable relief of reinstatement. In *Knudson*, the Supreme Court explained its decision in *Varity:*

> In *Varity Corp.*, we explained that § 502(a)(3) is a "'catchall' provisio[n]" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Thus, we concluded that § 502(a)(3) authorizes lawsuits by beneficiaries for individualized equitable relief for breach of fiduciary obligations, notwithstanding the petitioner's argument that such relief is not "appropriate" because §§ 502(a)(2) and 409 of ERISA specifically address liability for breach of fiduciary duty and preclude individualized relief. In *Varity Corp.*, however, it was undisputed that respondents were seeking *equitable* relief, and the question was whether such relief was "appropriate" in light of the apparent lack of alternative remedies. *Varity Corp.* did not hold, as petitioners urge us to conclude today, that § 502(a)(3) is a catchall

provision that authorizes *all* relief that is consistent with ERISA's purposes and is not explicitly provided elsewhere. To accept petitioners' argument is to ignore the plain language of the statute, which provides fiduciaries with only equitable relief.

*Knudson,* 534 U.S. at 221 n.5 (internal citations omitted) (emphasis in original). Thus, Street's argument that the *Varity* decision – in which the Supreme Court did not discuss the requirement that a plaintiff must identify particularized assets or funds in defendant's possession – controls over the subsequent Supreme Court cases of *Knudson* and *Serebroff* is without merit.

Next, Street relies on a post-*Knudson* case from the Eighth Circuit to justify her claim for monetary relief under Section 502(a)(3). *See Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004). In *Parke*, the Eighth Circuit concluded that a plaintiff seeking the disgorgement of profits – also known as an accounting for profits – need not identify any particular *res* or fund of money that holds the profits. *See Parke,* 368 F.3d at 1008-09. Indeed, in *Knudson*, the Supreme Court noted an exception to the general rule requiring the plaintiff to identify particular funds or property in the defendant's possession:

> There is a limited exception for an accounting for profits, a form of equitable restitution that is not at issue in this case. If, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular *res* containing the profits sought to be recovered.

*Knudson,* 534 U.S. at 214 (citation omitted).

The Court first notes that in her response brief, Street characterizes her claim as a "disgorgement of profits," whereas in her First Amended Complaint, Street alleges that she is seeking "equitable restitution." (First Am. Compl. Count III ¶ 14.) Street's new characterization of the relief she seeks does not save the day because, based on the facts as alleged, Street is not seeking a "disgorgement of profits." *See Wsol v. Fiduciary Mgmt. Assoc., Inc.,* 266 F.3d 654, 658 (7th Cir. 2001). In *Wsol*, the Seventh Circuit explained:

> The remedy of disgorgement is limited to cases in which the breach of the fiduciary obligation enables the fiduciary to make a profit "through [the fiduciary's] use of assets of the plan." The kind of misconduct contemplated is the fiduciary's appropriating plan assets or investing them in a risky fashion....

*Id.* (citation omitted); *see also Parke,* 368 F.3d at 1008 ("An accounting is imposed when the property subject to the constructive trust produces profits while in defendant's possession."). Here, Street seeks monetary damages in the amount of interest on her disability payments, not damages based on Ingalls' misuse of the plan's assets that resulted in profits. (First Am. Compl. Count III ¶ 26.) Under the circumstances as alleged, the applicable remedy is a constructive trust, which requires Street to identify the particular funds or property in Ingalls' possession. *See Knudson,* 534 U.S. at 213-14; *see also Parke,* 368 F.3d at 1008.

In Count III of her First Amended Complaint, Street seeks monetary relief in which there is no controlling agreement between the parties. Assuming the truth of the facts as alleged and construing Street's allegations liberally, *see Centers,* 398 F.3d at 333, Street's failure to identify particular funds in Ingalls' possession, as opposed to its general assets, makes the monetary relief Street seeks unavailable under Section 502(a)(3). *See Sereboff,* 126 S.Ct. at 1874-76. Therefore, the Court dismisses Street's claims for monetary relief in Count III without prejudice and grants Street's request for leave to amend her LTD claim.

### B. Injunctive Relief

Next, Ingalls contends that Street's request for injunctive relief, namely, – that the Court enjoin Ingalls from denying participants the right to file claims for benefits during the pendency of claims for benefits under the Workers Compensation Act – is moot because Street has already received her disability benefits. In response, Street contends that she seeks injunctive relief on behalf of a class, as well as herself. In reply, Ingalls agrees that if a class is certified "a claim for

injunctive relief may be proper as to certain class members who have not yet received their benefits (if there are any)." (R. 32-1, Def.'s Reply Mem. at 12.) Ingalls further states in reply: "To the extent plaintiff purports to seek an injunction only to compel future action on the part of Ingalls, her claim for injunctive relief may be proper." (*Id*.) The Court thus denies Ingalls' motion to dismiss Street's claim for injunctive relief in Count III at this time.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c) and dismisses Count II with prejudice. The Court grants in part and denies in part Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because it is undisputed that Street is not entitled to a jury trial for her remaining ERISA claim, the Court strikes Street's jury demand in Count III of the First Amended Complaint. Finally, the Court grants Street's request for leave to file a Second Amended Complaint as to her LTD claim.

Dated: March 15, 2007

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Court Judge**